OPINION
{¶ 1} Appellant, Randall C. Bassett, a.k.a. Robert C. Bassett, appeals from the August 23, 2001 judgment entry of the Domestic Relations Division of the Portage County Common Pleas Court.
{¶ 2} The trial court found that appellant and appellee, Ruth S. Bassett, were married on September 5, 1977.[1] One child, Robert, was born as issue of the marriage. The parties separated in 1996. At that time, they sold their marital home. The record before us indicates that on February 22, 1996, appellant received $18,700 from the proceeds of the sale of that home.[2]
{¶ 3} In March 1997, appellant purchased a mobile home. Appellant testified at trial that he subsequently permitted appellee to live in the mobile because she and Robert had been evicted from their apartment for nonpayment of rent. Appellant further testified that at some point after March 1999, he was required to move out of the mobile home pursuant to a civil protection order obtained by appellee. Appellant did not reclaim possession of the mobile home until November 12, 1999. Appellant filed the instant complaint for divorce on August 3, 1999.
{¶ 4} A temporary order was filed by a magistrate on August 27, 1999. Pursuant to that order, appellee was to pay her own household expenses, living expenses, and rent for the mobile home lot. On October 19, 1999, appellant filed a motion for contempt alleging that appellee had failed to pay lot rental and utilities for the mobile home. Although appellee was living in the mobile home, the lot rental and utilities were still in appellant's name. A hearing was held on appellant's motion on November 1, 1999. On November 12, 1999, the court filed an agreed judgment entry, in which it stated that "all issues concerning lot rental and living expenses, while [appellee] was in possession of the residence, will be presented at or before the final divorce hearing."
{¶ 5} The final hearing on appellant's complaint was held before the magistrate on January 31, 2000. The magistrate issued his decision on July 21, 2000, in which he found that the mobile home was marital property and that the parties were responsible for any debt in their respective names.
{¶ 6} Appellant filed objections to the magistrate's decision on August 3, 2000. Appellant objected to the magistrate's finding that the mobile home was marital property, and to the magistrate's failure to make findings concerning the unpaid lot rental and utility bills. A certified copy of the transcript was filed with the trial court on November 13, 2000. In a July 30, 2001 judgment entry, the trial court, having reviewed the transcript and the written memoranda of counsel, overruled appellant's objections. The trial court eventually adopted the magistrate's decision in an August 23, 2001 judgment entry.
{¶ 7} Appellant has filed a timely appeal of that decision and makes the following two assignments of error:
 {¶ 8} "[1.] The trial court erred as a matter of law to the prejudice of appellant and abused its discretion when it failed to enforce temporary orders requesting appellee to pay her living expenses while residing in his residence.
 {¶ 9} "[2.] The trial court erred in declaring certain funds to be marital property which had been given to [appellant] as a gift and which were used to purchase a residence for himself to be marital property."
{¶ 10} In his first assignment of error, appellant argues that the trial court abused its discretion when its August 23, 2001 judgment entry failed to enforce a temporary order filed on August 27, 1999, with respect to the allocation of expenses relating to the maintenance of the mobile home. A trial court abuses its discretion when conduct is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
{¶ 11} From March through November 1999, appellee was in possession of the mobile home. At the January 31, 2000 hearing, appellant testified that $2,111.84 was owed for rent for the lot and utilities for the mobile home. The relevant bills are attached to the hearing transcript as appellant's Exhibit C.
{¶ 12} Pursuant to a magistrate's temporary order filed on August 27, 1999, appellee was obligated to pay her own household expenses, including lot rent and living expenses. On October 19, 1999, appellant filed a motion for contempt alleging that appellant had received a notice of termination of tenancy for nonpayment of rent. Appellant's motion also alleged that appellee was delinquent on accounts with Ohio Edison, East Ohio Gas, Time Warner Cable, Ameritech, and MCI, all of which were in appellant's name. As we previously noted, in its November 12, 1999 judgment entry, the trial court ordered that "all issues concerning lot rental and living expenses, while [appellee] was in possession of the residence, will be presented at or before the final divorce hearing."
{¶ 13} At the January 31, 2000 hearing, appellant testified that appellee had not paid rent or utilities while she was in possession of the mobile home. He also testified that he had paid between $1400 and $1500 to keep the utilities from being disconnected and to pay rent that was past due. He further stated that appellee never reimbursed him for any of those expenses.
{¶ 14} In his July 21, 2000 decision, the magistrate found that the parties had not listed any debt, but that they were responsible for any debt in their respective names and would hold the other harmless from any other debt. In his August 3, 2000 objections to the magistrate's decision, appellant objected that the magistrate had failed to make any findings with respect to appellee's nonpayment of rent and utilities and requested new findings with respect to this issue. The trial court overruled appellant's objections in its July 30, 2001 judgment entry.
{¶ 15} Here, the trial court, in its August 27, 1999 temporary order, instructed appellee to pay her own living expenses, including rent on the lot. When appellant brought it to the court's attention that appellee was not paying her living expenses, the trial court issued its November 12, 1999 judgment entry stating that the issue would be addressed at or before the final hearing.
{¶ 16} Appellant presented evidence at the final hearing that appellee had not paid her own living expenses. In addition to copies of the unpaid bills that were attached to the transcript as appellant's exhibits, the following exchange occurred at the hearing:
 {¶ 17} "[Appellant's attorney]: Were there Orders of this Court then that [appellee] was to have exclusive possession of the residence at that time?
{¶ 18} "[Appellant]: Yes.
 {¶ 19} "[Appellant's attorney]: And what do you understand the terms that were in place there concerning the payments?
 {¶ 20} "[Appellant]: Yeah, after some period of time, [appellee] was told to pay the rent, utilities, expenses of the home. And she did not do that, not one, single penny."
{¶ 21} In view of the evidence submitted by appellant that he had paid appellee's living expenses because the bills for the mobile home's rent and utilities were in his name, the magistrate's finding that the parties were responsible for any debt in their respective names directly contradicted his prior order that appellee was to be responsible for her own living expenses. The magistrate made this finding in the absence of additional evidential material or legal analysis that would provide a result different from that reached in his prior order. To the contrary, appellant reiterated in his testimony at the final hearing that appellee had not paid her living expenses while residing in the mobile home and presented testimony and exhibits indicating that he was owed over $2,000 for lot rental and utilities. Under these circumstances, the trial court abused its discretion in adopting the magistrate's findings that contradicted the August 27, 1999 order, particularly, the finding that the parties had not listed any other debt, which was clearly contradicted by the record. For the foregoing reasons, appellant's first assignment of error is well taken.
{¶ 22} In his second assignment of error, appellant contends that the funds used to purchase the mobile home were separate property provided to him by his mother, Ruth C. Bassett, and that the court erred in treating the mobile home as marital property.[3]
{¶ 23} R.C. 3105.171(A)(6)(a) provides that "`[s]eparate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following: * * * (vii) [a]ny gift of real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse."
{¶ 24} The commingling of separate property with marital property does not destroy the identity of the separate property if the separate property is traceable. R.C. 3105.171(A)(6)(b); Matic v. Matic (July 27, 2001), 11th Dist. No. 2000-G-2266, 2001 WL 848530, at 2. The party seeking to establish the traceability of separate property has the burden of proof, by a preponderance of the evidence. Matic, supra, at 2. We will not reverse the trial court's determination of property as separate or marital absent an abuse of discretion. Peck v. Peck (1994),96 Ohio App.3d 731, 734.
{¶ 25} In the instant matter, appellant had the burden of demonstrating by clear and convincing evidence that the funds he used to purchase the mobile home were given only to him. He then had to show by a preponderance of the evidence that the funds were used to purchase the mobile home.
{¶ 26} At the hearing, appellant testified that in early 1997, he was seeking a residence. His mother advised him that his father had left some money for him and that he could use it towards the purchase of a mobile home. He also testified that she agreed to make up the difference between the cost of the mobile home and the amount left to appellant by his father. Appellant further testified that he was not living with appellee at that time and that his mother intended that the money be exclusively for his use.
{¶ 27} Appellant's Exhibit B is attached to the hearing transcript. It includes a receipt for the purchase of the mobile home indicating that the total cost of the unit was $20,831, including sales tax. This same exhibit also includes a photocopy of a letter from the Investigations Division of Northern Trust Bank. This letter includes a photocopy of a check from appellant's mother to appellant in the amount of $15,560.35, dated February 7, 1997. Exhibit B also includes a personal money order payable to appellant's mother from Third Federal Savings in the amount of $7,332.32. This money order was also dated February 7, 1997. Appellant testified that this money order represented the proceeds of a certificate of deposit held by his mother, and that she endorsed the money order over to him for the purpose of purchasing the mobile home.
{¶ 28} Approximately six weeks after appellant allegedly received $22,892.67 as a gift from his mother, he was the remitter on a cashier's check in the amount of $19,582.04, dated March 13, 1997. This check was apparently issued in payment for the mobile home, which, according to the certificate of title, had a purchase price of $19,600.
{¶ 29} Appellant had a burden to demonstrate by clear and convincing evidence that the funds provided to him by his mother were given only to him. Clear and convincing evidence is that degree of proof, which creates in "the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus. In this case, the parties were separated in February 1997, when appellant's mother provided him the funds to purchase the mobile home. This separation involved the sale of the marital home and the parties moving into separate residences. These facts, when taken in conjunction with appellant's testimony that his mother intended the gift to be for his use only, provides clear and convincing evidence that the funds provided by appellant's mother were separate property.
{¶ 30} To establish the traceability of the gift from his mother, appellant had to demonstrate by a preponderance of the evidence that the funds provided by his mother were used for the purchase of the mobile home. Here, the timing of the transactions is highly indicative of the fact that appellant used the funds provided by his mother to purchase the mobile home. Appellant's mother wrote a check to him for over $15,000 on February 7, 1997. On that same day, she withdrew over $7,000 from a certificate of deposit account. On March 13, 1997, appellant paid just over $19,000 for his mobile home. The timing of the transactions, in the absence of evidence of a major purchase by appellant between February 7 and March 13, 1997, suggests that appellant did in fact use the money provided by his mother to purchase the mobile home.
{¶ 31} In his decision, the magistrate concluded that appellant purchased the mobile home using his share of the proceeds from the sale of the marital home. However, appellant testified at the hearing that he made approximately $11,000 in the year following the sale of the marital home, and that he spent the proceeds from the sale of the marital home on living expenses, and two cars that were no longer in working order. It is not inconceivable to this court that an individual with an income of $11,000 per annum would spend the larger portion of $18,700 in the course of a year to cover basic living expenses. While such a course of action might not represent prudent fiscal behavior, the American general public is well-known for spending beyond its means.
{¶ 32} In view of the foregoing, we conclude that the trial court abused its discretion in determining that the mobile home was marital property. Therefore, appellant's second assignment of error is well-taken.
{¶ 33} The judgment of the Domestic Relations Division of the Portage County Court of Common Pleas is hereby reversed and remanded for further proceedings consistent with this opinion.
WILLIAM M. O'NEILL, J., ROBERT A. NADER, J., concur.
[1] The marriage was a common-law marriage.
[2] Appellant's Exhibit A, which is attached to the transcript of the trial court proceedings, contains documents relating to the sale of the home and the distribution of the proceeds. These documents include a check in the amount of $18,700, dated February 22, 1996, payable to appellant from an escrow account.
[3] Appellee argues that this issue is not before us because appellant failed to submit a complete transcript of the magistrate's hearing to the trial court. As we noted previously, a certified copy of the transcript of the final hearing was filed with the trial court on November 13, 2000. There is no indication by the court reporter that the transcript is a partial transcript. Further, in a July 30, 2001 judgment entry, the trial court ruled that a transcript of the magistrate's hearing was filed with the court.